**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

FILED:   JULY 17, 2008
08CV4063
JUDGE ANDERSEN
MAGISTRATE JUDGE SCHENKIER
NF

| | |
|---|---|
| BOARD OF EDUCATION OF BLOOM TOWNSHIP HIGH SCHOOL DISTRICT NO. 206, COOK COUNTY, ILLINOIS, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Judge ) |
| GARY DEFRANCESCO and FUNDING CONNECTION, INC. | ) Jury Demanded ) ) |
| Defendants | ) ) |

Case No.

## COMPLAINT

NOW COMES Plaintiff, the BOARD OF EDUCATION OF BLOOM TOWNSHIP SCHOOL DISTRICT NO. 206, COOK COUNTY, ILLINOIS, by and through its attorneys, HAUSER, IZZO, DeTELLA & PETRARCA, LLC, to complain against Defendant, FUNDING CONNECTION, INC, as follows:

### PARTIES AND JURISDICTION

1. The Board of Education of Bloom Township School District No. 206, hereinafter "Bloom Township", is a public school district whose administrative offices are located in Cook County, Illinois.

2. Funding Connection, Inc., hereinafter "Funding Connection", is a Delaware corporation doing business in the state of Illinois with its principal place of business at 845 Third Avenue, New York, New York 10022.

3. Gary DeFransceco was at all times relevant hereto the President of Funding Connection, Inc.

1

4.  All of the transactions herein complained of took place and/or occurred in Cook County, Illinois and, as such, venue is proper before this court.

## JURISDICTION AND VENUE

5.  Jurisdiction is properly before this Court pursuant to 28 U.S.C. §1332 because there is diversity of citizenship between the Plaintiff and Defendants and the amount in controversy exceeds $75,000.

6.  A substantial part of the acts or omissions complained of in this case took place in Cook County, Illinois and, accordingly, venue is properly before this Court pursuant to 28 U.S.C. §1391(a).

## COUNT I – BREACH OF CONTRACT

7.  In November 2004 Bloom Township entered into an agreement, "Professional Fundraising Agreement" with Funding Connection. A true and correct copy of which is attached hereto as Exhibit A and incorporated herein by reference.

8.  Under the terms of the agreement Funding Connection agreed to perform the following actions:

a.  Prepare comprehensive fundraising plans. Exhibit A, ¶2.

b.  Prepare proposals for submission to the U.S. Department of Education and other federal funding agencies, including, but not limited to, the National Science Foundation, National Endowment for the Humanities, and the U.S. Department of Health and Humans Services in the amount of approximately $50,000,000.00. Exhibit A, ¶ 2.

c.  Identify and target major national foundations and corporate foundations, including but not limited to, Ford, Carnegie, Pew, DeWitt-Wallace, and Heinz, to match Bloom Township's

2

program initiative for funding opportunities and prepare approximately $10,000,000.00 in private sector proposals. Exhibit A, ¶ 2.

d.     Monitor all available state and local funding opportunities and develop proposals for competitive state and local funding opportunities. Exhibit A, ¶ 2.

e.     Disseminate, on a regular basis, information on grant availability to Bloom Township, including conducting workshops for teachers and administrators. Exhibit A, ¶ 2.

8.     Funding Connection guaranteed that a minimum of Ten Million Two Hundred Forty Thousand Dollars ($10,240,000.00) would be paid or pledged to Bloom Township as a result of its work by the end of the agreement.

9.     Funding Connection agreed to continue working with Bloom Township after the end of the agreement, at no additional cost, until $10,240,000.00 was paid or pledge to Bloom Township. Exhibit A, ¶ 3.

10.    Under the terms of the agreement, Bloom Township agreed to pay Funding Connection approximately Two Hundred Forty Thousand Dollars ($240,000.00) in the following manner:

a.     Bloom Township agreed to pay $30,000.00 by November 15, 2004. Exhibit A, ¶ 4.

b.     Bloom Township agreed to pay $8,181.00 from December 1, 2004 thru October 1, 2005. Exhibit A, ¶ 4.

c.     Bloom Township agreed to pay Funding Connection $10,000.00 monthly from November 1, 2005 thru October 31, 2006. Exhibit A, ¶ 4.

11.    Bloom Township paid Funding Connection approximately $240,000.00 in accordance with the agreement.

12. Funding Connection has breached the agreement with Bloom Township as a result of the following:

a. Funding Connection failed to secure $10,240,000.00 in payment and/or pledges to Bloom Township as a result of its fundraising work.

b. Funding Connection failed to continue working for Bloom Township until $10,240,000.00 has been paid or pledge to Bloom Township as a result of its fundraising work.

c. Funding Connection failed to prepare comprehensive fundraising plans for Bloom Township.

d. Funding Connection failed to prepare proposals for submission to the U.S. Department of Education and other federal funding agencies, including the National Science Foundation, National Endowment for the Humanities, and the U.S. Department of Health and Humans Services in the amount of approximately $50,000,000.00

e. Funding Connection failed to identify and target major national foundations and corporate foundations, including but not limited to, Ford, Carnegie, Pew, DeWitt-Wallace and Heinz, to match Bloom Township's program initiative for funding opportunities and failed to prepare approximately $10,000,000.00 in private sector proposals.

f. Funding Connection failed to monitor all available state and local funding opportunities and develop proposals for competitive state and local funding opportunities.

g. Funding Connection failed to regularly disseminate information on grants available to Bloom Township and to conduct workshops for teachers and administrators.

13. As a result of the aforementioned breaches, the Board of Education of Bloom Township High School District 206 has been damaged in the amount of Two Hundred Forty Thousand Dollars ($240,000) plus costs of this suit.

WHEREFORE, Defendant Board of Education of Bloom Township School District No. 206, Cook County, Illinois demands judgment against the Defendants in the amount of $240,000.00 plus costs of this suit and such further and other relief as this honorable Court deems just and equitable.

## COUNT II – BREACH OF GOOD FAITH AND FAIR DEALING

14.    Plaintiff restates and realleges allegations 1-13 as if fully restated herein.

15.    Every contract entered into in the State of Illinois has an implied duty of good faith and fair dealing, including the contract in this case.

16.    The contract at issue in this case provided Funding Connections with discretion as to how and when it would perform its obligations under the contract.

17.    Funding Connections has failed to exercise its discretion in good faith and has wrongfully refused to comply with the terms of the contract in a timely fashion.

18.    As a result of the aforementioned breaches, the Board of Education of Bloom Township High School District 206 has been damaged in the amount of Two Hundred Forty Thousand Dollars ($240,000) plus costs of this suit.

## COUNT III – CONVERSION

18.    Plaintiff restates and realleges allegations 1-18 as if fully stated herein.

19.    Funding Connections has unauthorized wrongful control of funds paid by Bloom Township.

20.    Bloom Township has an unequivocal right in the funds paid to Funding Connections.

21.    Bloom Township has a right to immediate possession of the funds paid to Funding Connections which is absolute.

22.     Bloom Township has demanded the funds from Funding Connections but, to date, Funding Connections has refused to provide the funds to Bloom Township.

23.     Bloom Township has been damaged in the amount of Two Hundred Forty Thousand Dollars ($240,000) plus costs of this suit by Defendant's wrongful conversion.

### COUNT IV – FRAUD IN THE INDUCEMENT

24.     Plaintiff restates and realleges allegations 1-23 as if fully restated herein.

25.     DeFrancesco made representations of material facts to Bloom Township during the course of the negotiations of the contract between the parties.

26.     DeFrancesco made these representations for the purpose of inducing Bloom Township to enter into an agreement with Funding Connections and to pay Funding Connections sums of money.

27.     The representations of material fact made by DeFrancesco were known by him to be false at the time.

28.     The representations of material fact were relied upon by Bloom Township.

29.     The reliance of Bloom Township on the false representations of DeFrancesco caused damage to it in the amount of Two Hundred Forty Thousand Dollars ($240,000) plus costs of this suit by the Defendant's fraudulent activites.

WHEREFORE, Plaintiff prays for damages in the amount of Two Hundred Forty Thousand Dollars ($240,000) plus costs of this suit.

                                        Respectfully submitted,

                                        BOARD OF EDUCATION OF BLOOM
                                        TOWNSHIP HIGH SCHOOL DISTRICT
                                        206

                                By:     /s/ Christopher L. Petrarca
                                        CHRISTOPHER L. PETRARCA

CHRISTOPHER L. PETRARCA
WILLIAM F. GLEASON
HAUSER, IZZO, DeTELLA & PETRARCA, LLC
19730 Governors Highway, Suite 10
Flossmoor, IL 60422
(708)799-6766
5G:\DISTRICTS\SD2\SD206C\Funding Connections\Complaint.doc

## PROFESSIONAL FUNDRAISING AGREEMENT

THIS AGREEMENT (the "Agreement"), dated as of November   , 2004 by and between **FUNDING CONNECTION, INC.**, organized and existing under the laws of the State of Delaware having a principal place of business at 845 Third Avenue, New York, New York 10022 (the "Fundraiser") and **BLOOM TOWNSHIP HIGH SCHOOL DISTRICT 206**, a municipal corporation, organized and existing under the laws of the State of Illinois having a principal place of business at 100 West 10th Street, Chicago Heights, Illinois 60411 (the "Client"). Fundraiser and Client are each hereafter sometimes individually referred to as a "Party" and collectively called the "Parties".

WHEREAS, Fundraiser is engaged in the business of soliciting funds for educational institutions through developing private sector and public sector funding opportunities on behalf of its educational clients;

WHEREAS, Client wishes to engage Fundraiser for the implementation and management of a comprehensive proposal development and fundraising initiative including: preparation and submission of approximately fifty million dollars ($50,000,000.00) in federal proposals and contracts; preparation and submission of approximately ten million dollars ($10,000,000.00) in private sector proposals primarily to major national foundations; preparation of proposals for competitive state funding initiatives; and coordination of specialized fundraising campaigns – alumni campaigns, corporate sponsorships, and scholarship campaigns. The goal of this comprehensive fundraising initiative is projected at twenty-five to thirty million dollars ($25,000,000.00 - $30,000,000.00) by the conclusion of the second year of the contract period. The funds secured will most likely be part of multiple year grants; therefore, the funds from these projects will probably be paid to the Client over a three to five year project period.

NOW, THEREFORE, in consideration of the mutual covenants hereinafter set forth, the Parties hereto agree as follows:

EXHIBIT A

1.  **Term.** This Agreement shall take effect on November 1 2004, and shall continue in force for a term of two years (the "Term") through October 31, 2006. At the end of said Term upon the mutual agreement of the Parties this Agreement may be renewed.

    (a) Fundraiser has the right to terminate this Agreement immediately, upon written notice, if Client's monthly payment, required under Article 3, section (a) and (b) of this Agreement, is more than five (5) days late.

    (b) Either Party may terminate this Agreement for cause in the event of the other Party's material breach of or failure to carry out its obligations under this Agreement (a "Default"). The Party seeking to terminate this Agreement shall give the other Party a written notice of termination, describing the Default in reasonable detail, at least thirty (30) days prior to the effective date of such intended termination. The Party who has received a written notice of Default shall have a period of thirty (30) days after receipt in which to correct the Default. If the Default is not cured within the applicable thirty (30) day cure period following receipt of the written notice, this Agreement will automatically terminate effective as of the end of such thirty (30) day period.

    (c) Upon termination of this Agreement, neither Party shall have any further obligation hereunder, except for obligations accruing prior to the date of termination.

2.  **Fundraiser's Duties.** Fundraiser shall provide the following fundraising services to the Client:

    (a) Prepare a comprehensive fundraising plan for Client that effectively links district goals, plans, superintendent's vision and the needs of individual schools to available public and private sector funding opportunities.

    (b)    Prepare proposals for submission totaling approximately fifty million dollars ($50,000,000.00) to the U.S. Department of Education as well as other appropriate federal funding agencies, including but not limited to, the National Science Foundation, National Endowment for the Humanities, and the U.S. Department of Health and Human Services.

    (c)    Identify and target major national foundations and corporate foundations to match Client's program initiatives for funding opportunities; including but not limited to, Ford, Carnegie, Pew, DeWitt-Wallace, Heinz. A comprehensive private sector proposal development plan resulting in the preparation of approximately ten million dollars ($10,000,000.00) in private sector proposals will be completed. This includes utilizing the Fundraiser's contacts at the individual foundations to set up meetings for the district superintendent.

    (d)    Monitor all available State and Local funding opportunities. Develop proposals for competitive State and Local funding opportunities.

    (e)    Disseminate information on grants availability to the school district on a regular basis. This includes conducting workshops for teachers and administrators on available funding opportunities focused on individual schools and classrooms.

    (f)    Complete evaluation and data collection responsibilities related to specific funded grant projects where Fundraiser is specifically identified to carry out these services.

3.    **Fundraiser Fee; Binder and Payment.**

    (a)    Client shall pay Fundraiser an initial fundraiser fee of thirty thousand dollars ($30,000.00) due and payable by November 15, 2004; as of the next eleven months beginning on December 1, 2004, Client shall pay Fundraiser a monthly fee of eight thousand one hundred eighty one dollars ($8,181.00). As of the second year of

the Term beginning on November 1, 2005, Client shall pay Fundraiser a fundraiser fee of ten thousand dollars ($10,000.00). Direct payments by Client shall not exceed two hundred forty thousand dollars ($240,000.00); this fee shall include all of Fundraiser's expenses such as travel, accommodations, telephone and facsimile.

(b) Client's payment of the monthly payment shall be made payable to: Funding Connection, Inc. and sent to: Funding Connection, Inc., c/o Rosenzweig and Maffia, LLP, 845 Third Avenue, Suite 1300, 10022-6622. The monthly fees shall be due on the first of each month.

(c) Fundraiser will conduct evaluation, program design and data collection services ("Evaluation Services") for identified funded grant projects as a way of enabling Client to recover fees paid to the Fundraiser for years one and two. For Evaluation Services provided by Fundraiser that exceed two hundred and forty thousand dollars ($240,000.00) Client shall pay the Evaluation Service fee as designated in the grant to Fundraiser upon receipt of grant funds. Fundraiser assures that a minimum of ten million two hundred forty thousand dollars ($10,240,000.00) will be paid or pledged to the Client through its work. This amount equals two years of Fundraiser's fees and ten million dollars ($10,000,000.00). If this total is not paid or pledged by the end of the Term of this Agreement, then Fundraiser will continue to work with Client at no additional cost until this minimum has been paid or pledged.

4. **Relationship of the Parties.** Fundraiser shall be, and in all respects be deemed to be, an independent contractor in the performance of its duties hereunder, any law of any jurisdiction to the contrary notwithstanding.

(a) All persons working for or with Fundraiser in performing its obligations to Client under this Agreement will not be employees of Client or have any employer-employee relationship with Client.

      (b)    Fundraiser shall be solely responsible for making all payments to and on behalf of its employees and subcontractors, including those required by law, and Client shall in no event be liable for any debts or other liabilities of Fundraiser.

      (c)    Fundraiser shall be solely responsible for selecting and determining the proper and appropriate procedures and practices to be used in rendering services for Client.

      (d)    Fundraiser shall not, by reason of this Agreement or the performance of the services, be or be deemed to be, an employee, agent, partner, co-venturer or controlling person of Client and Fundraiser shall have no power to enter into any Agreement on behalf of, or otherwise bind Client without written authorization.

      (e)    No activity, employment, venture, business or other pursuit of Fundraiser during the Term of this Agreement shall conflict with Fundraiser's obligations under this Agreement or be adverse to Client's interest during the Term of this Agreement.

5.    **Assignment.** The Fundraiser may not assign this Agreement or any part thereof to any other entity without the prior written consent of the Client.

6.    **Notices.** All notices which may be given by either Party to the other shall be deemed to have been duly given when made in writing and delivered in person or sent by certified or registered mail, return receipt requested, postage prepaid or by express mail service or other verified overnight courier service to the Party at its address as it appears on the first page of this Agreement or at such other address as either Party may designate by written notice delivered hereunder.

7.    **Waiver.** Failure to enforce any provision hereof shall not constitute a waiver of that or any other provision in any other circumstances.

8. **Entire Agreement.** This Agreement shall constitute the entire Agreement between the Parties with respect to the subject matter and supersedes all previous agreements and understandings between Fundraiser and Client. No provision hereof may be modified or waived orally but only by an agreement in writing signed by the Party against whom enforcement of any waiver, change, modification, extension or discharge is sought.

9. **Governing Law.** This Agreement shall be governed by and construed under the laws of the State of Illinois.

10. **Binding Effect.** This Agreement shall be binding upon, and inure to the benefit of, the Parties hereto and their respective legal representatives, trustees, receivers, successors and permitted assigns.

11. **Invalidity of Provisions.** If any provision of this Agreement is held invalid, the remainder of this Agreement shall not be affected unless the invalid provision substantially impairs the benefits of the remaining portions of this Agreement.

12. **Authorization for Agreement.** The execution and performance of this Agreement by each Party has been duly authorized by all necessary laws, resolutions, corporate action, or School Board action and this Agreement constitutes the valid and enforceable obligations of each Party in accordance with its terms.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized officers as of the day and year first above written.

Date: November    , 2004          FUNDING CONNECTION, INC.

                                  _____
                                  GARY DEFRANCESCO
                                  ITS: PRESIDENT

Date: November    , 2004          BLOOM TOWNSHIP HIGH
                                  SCHOOL DISTRICT 206

                                  _____
                                  GLEN M. GIANNETTI
                                  ITS: SUPERINTENDENT

Date: November    , 2004          ATTEST

                                  *Shirley Burbage* (signature)
                                  _____
                                  SECRETARY, BOARD OF EDUCATION